IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA
**CIVIL DIVISION**

RICKY L. WOLCOTT,

      Plaintiff,

vs.

                                Case No. _05-2010CA-33251_

GENERAL ELECTRIC COMPANY;
GE HEALTHCARE AS;
GE HEALTHCARE, INC.;
BAYER CORPORATION;
BAYER HEALTHCARE PHARMACEUTICALS, INC.,
f/k/a BERLEX, INC. and f/k/a BERLEX
LABORATORIES, INC.;
BAYER SCHERING PHARMA AG, f/k/a SCHERING
AG;
BAYER AG;
MALLINCKRODT, INC., a subsidiary of TYCO
HEALTHCARE GROUP, LP;
BRACCO DIAGNOSTICS INC.;
BRACCO RESEARCH USA, INC.;
ALTANA PHARMA AG; and
NYCOMED INTERNATIONAL MANAGEMENT
GmbH,

      Defendants.

**COPY OF ORIGINAL**

*[stamp: FILED IN THE OFFICE CLERK OF CIR. CT. BREVARD CO. FL. 2010 JUL 28 A 10: 16   SCOTT ELLIS]*

**COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

      Plaintiff, RICKY L. WOLCOTT, by and through his undersigned counsel, sues

Defendants and allege as follows:

**JURISDICTION AND VENUE**

      1.    This is an action for damages in excess of Seventy-Five Thousand ($75,000),

exclusive of interest and costs.

1

2.     Venue is proper in the this Circuit Court because a substantial portion of the events giving rise to this claim occurred in Melbourne and Palm Bay, Brevard County, Florida, including the administration to Plaintiff of the gadolinium contrast agent products, including products known as ProHance and Omniscan on multiple occasions.

3.     This action, if removed to federal court, is also a potential tag-along proceeding to the multi-district litigation proceedings currently pending in the United States District Court for the Northern District of Ohio, Eastern Division, and styled "*In Re: Gadolinium Based Contrast Agents Products Liability Action,*" MDL 1909, Case No. 1:08-gd-50000-DAP. Pursuant to Case Management Order No. 3 from MDL 1909, Plaintiff asserts that the actions and/or omissions which form the basis of Plaintiff's complaint occurred in the State of Florida.

## PARTIES

4.     Plaintiff RICKY L. WOLCOTT has resided in Palm Bay, Brevard County, Florida, during all times material to this action.

5.     Defendant GENERAL ELECTRIC COMPANY is a New York Corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06431. Defendant GENERAL ELECTRIC COMPANY is a resident of both New York and Connecticut. Defendant GENERAL ELECTRIC COMPANY is the parent company of Defendant GE HEALTHCARE AS and GE HEALTHCARE, INC.

6.     Omniscan, one of the products in question in this suit, is identified by GENERAL ELECTRIC COMPANY in its packaging is a product of "GE HEALTHCARE," which is a unit/division of GENERAL ELECTRIC COMPANY. "GE HEALTHCARE" is prominently identified on the Omniscan packaging/prescribing information, alongside the "GE" monogram. Omniscan is identified as a trademark of GE HEALTHCARE. "GE" and the GE monogram are

2

trademarks of the GENERAL ELECTRIC COMPANY. The GE HEALTHCARE website, which includes detailed product information concerning Omniscan, is copyrighted by GENERAL ELECTRIC COMPANY. GENERAL ELECTRIC COMPANY does business as GE HEALTHCARE, including the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into United States interstate commerce, including commerce in the State of Florida, the drug Omniscan. At all times relevant, Defendant GENERAL ELECTRIC COMPANY, and/or its corporate predecessors, was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into the stream of commerce, directly and indirectly through third parties or related entities, the drug Omniscan.

7.      Defendant GE HEALTHCARE AS is a Norwegian corporation with its principal place of business in the Kingdom of Norway. Defendant GE HEALTHCARE AS is a subsidiary of GENERAL ELECTRIC COMPANY. Oroniscan's package insert/prescribing information identifies the putative manufacturer of Omniscan as GE HEALTHCARE AS.

8.      At all times relevant, Defendant GE HEALTHCARE AS, and/or its corporate predecessors, was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into United States interstate commerce, including cotomerce in the State of Florida, directly and indirectly through third parties or related entities, the drug Omniscan.

9.      Defendant GE HEALTHCARE, INC. is a Delaware corporation with its principal place of business at 101 Carnegie Center, Princeton, New Jersey.   Defendant GE HEALTHCARE, INC. is a resident and citizen of both Delaware and New Jersey. Defendant

3

GE HEALTHCARE, INC. is a subsidiary of GENERAL ELECTRIC COMPANY. Omniscan's package insert identifies the putative distributor of Omniscan as GE HEALTHCARE, INC.

10.    At all times relevant, Defendant GE HEALTHCARE, INC., and/or its corporate predecessors, was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including commerce in the State of Florida, directly and indirectly through third parties or related entities, the drug Onmiscan.

11.    Upon information and belief, and at the relevant times, Omniscan was distributed and sold in the United States by GE HEALTHCARE, INC. and was manufactured by GE HEALTHCARE AS.

12.    Defendants GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., and GE HEALTHCARE AS will be collectively referred to in this Complaint as the "GE DEFENDANTS."

13.    Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. (formerly known as BERLEX INC., and formerly known as BERLEX LABORATORIES, INC.) is a Delaware corporation with its principal place of business at 6 West Belt, Wayne, New Jersey, 07470. Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is a resident and citizen of both Delaware and New Jersey. Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. (formerly known as BERLEX INC. and formerly known as BERLEX LABORATORIES, INC.) is a subsidiary of Defendant BAYER CORPORATION and a division of BAYER AG.

14.    On April 4, 2007, BERLEX INC. formerly known as BERLEX LABORATORIES, INC. changed its name to BAYER PHARMACEUTICALS, INC. Therefore, BAYER HEALTHCARE PHARMACEUTICALS, INC. is a corpomte successor to BERLEX,

4

INC. formerly known as BERLEX LABORATORIES, INC. and, as such, is obligated for its predecessors' liabilities.

15.   At   ali   times   relevant,   Defendant   BAYER   HEALTHCARE PHARMACEUTICALS, INC., and/or its corporate predecessors, was engaged in the busiaess ofi designing, licensing, manufacturing, distributing, selling, mariceting, and/or introducing into the stream of conmerce, including commerce in the State of Florida, directly and indirectly through third parties or related entities, the prescription dmg Magnevist (gadopentetate dimeglumine).

16.   Defendant BAYER CORPORATION is incorporated in Indiana and has its principal place of business near Pittsburgh, Pennsylvania.

17.   Defendant BAYER SCHERING PHARMA AG is a foreign company domiciled in Germany.

18.   Defendant BAYER SCHERING PHARMA AG is a corporate successor to SCHERING AG.  SCHERING AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006. At all times relevant, Defendant BAYER SCHERING PHARMA AG formerly known as SCHERING AG, and/or its corporate predecessors, was engaged in the business ofi designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into the stream ofi commerce, inciuding commerce in the State ofi Florida, directiy and indirectiy through third parties or related entities, the prescription drug Magnevist (gadopentetate dimeglumine).

19.   Defendant BAYER AG is a company domiciled in Germany and is the parent/holding company of both BAYER HEALTHCARE PHARMACEUTICALS, INC. and BAYER SCHERING PHARMA AG.

20.    Defendants BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER
CORPORATION, BAYER SCHERING PHARMA AG and BAYER AG will be collectively
referred to in this Complaint as the "BAYER DEFENDANTS."

21.    At all relevant times, the BAYER DEFENDANTS were each engaged in the
business of designing, licensing, manufacturing, distributing, selling, marketing, and/or
introducing into interstate commerce, including commerce in the State of Florida, either directly
or indirectly through third parties or related entities, the diagnostic agent Magnevist
(gadopentetate dimeglumine).

22.    Defendant MALLINCKRODT, INC. ("DEFENDANT MALLINCKRODT") is a
Delaware corporation with its principal place of business at 675 McDonnell Blvd., St. Louis,
Missouri, 63134. DEFENDANT MALLINCKRODT is a resident aud citizen of both Delaware
and Missouri. DEFENDANT MALLINCKRODT is a subsidiary of Tyco Healthcare Group LP.

23.    At all times relevant, DEFENDANT MALLINCKRODT was engaged in the
busiaess of designing, licensing, manufacturing, distributing, selling, marketing, and/or
introducing into interstate commerce, including commerce bn the State of Florida, either directly
or indirectly through third parties or related entities, the diagnostic agent OptiMARK.

24.    Defendant BRACCO DIAGNOSTICS INC. is a Delaware corporation with its
principal place of business in Princeton, New Jersey.

25.    Upon information and belief, at ail times relevant, Defendant BRACCO
DIAGNOSTICS INC. was engaged in the business of designing, licensing, manufacturing,
distributing, selling, marketing, and/or introducing into interstate commerce, including
conmerce in the State of Florida, either directiy or indirectly through third parties or related
entities, the diagnostic agents MultiHance and ProHance.

6

26.     Upon information and belief, Defendant BRACCO RESEARCH USA, INC. is a Delaware corporation, with its principal place of business in Princeton, New Jersey.

27.     Upon information and belief, at all times relevant, Defendant BRACCO RESEARCH USA, INC. was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including commerce in the State of Florida, either directly or indirectly through third parties or related entities, the diagnostic agents MultiHance and ProHance.

28.     Upon information and belief, Defendant ALTANA PHARMA AG is a German company with its principal place of business in Germany.  Defendant ALTANA PHARMA AG manufactured MultiHance and/or ProHance for BRACCO DIAGNOSTICS INC.

29.     Upon information and belief, at all times relevant, Defendant ALTANA PHARMA AG was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including commerce in the State of Florida, either directly or indirectly through third parties or related entities, the diagnostic agents MultiHance and ProHance.

30.     Defendant    NYCOMED    INTERNATIONAL    MANAGEMENT    GmbH ("NYCOMED") is a Swiss company domiciled in Switzerland.  Defendant NYCOMED bought ALTANA PHARMA AG in 2006.  Defendant NYCOMED is the corporate successor to ALTANA PHARMA AG and, as such, is obligated for its predecessor's liabilities.

31.     Defendants BRACCO DIAGNOSTICS INC., BRACCO RESEARCH USA, INC., ALTANA PHARMA AG AND NYCOMED will be collectively referred to in this Complaint as the "BRACCO DEFENDANTS."

7

32. At all times relevant, the BRACCO DEFENDANTS were engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including commerce in the State of Florida, either directly or indirectly through third parties or related entities, the diagnostic agents MultiHance and ProHance.

## GENERAL ALLEGATIONS

33. Omniscan is an injectable paramagnetic contrast agent for magnetic resonance imaging and arteriography. It contains the metal gadolinium, which is highly toxic in its free state. Onmiscan [which is also known by its chemical name of gadolinium diethylenetriamine pentaacetic acid bismethylamide (gadodiamide)] was represented by the GE DEFENDANTS to be safe and effective for intravenous administration to facilitate the radiologic visualization of lesions with abnormal vascularity.

34. Onmiscan is cleared from the body solely by glomerular filtration in the kidneys. As a result, it has a prolonged half-life in patients with renal insufficiency. Accordingly, such patients face an increased risk for adverse health effects in connection with administration of Omniscan.

35. Onmiscan was originally developed by Salutar, Inc., which, in turn, conducted pre-clinical testing in concert with Sterling Winthrop and Daiichi Pharmaceuticals. Salutar was subsequently acquired by NYCOMED. In 1994, NYCOMED also acquired Sterling Winthrop's diagnostic imaging business.

36. In 1997, NYCOMED acquired Amersham International pic, and the new company was named Amersham pic, which then held the rights to Omniscan.

37. In 2004, GENERAL ELECTRIC COMPANY acquired Amersham pic and the rights to Omniscan. At the time of the acquisition, Amersham pic was the ultimate parent

8

company of Amersham Health AS, which manufactured the Omniscan that was distributed and sold in the United States.   Also, Amersham pic was the ultimate parent company of Amersham Health Inc., which distributed and sold Omniscan in the United States.   In 2006, Amersham Health AS was renamed GE HEALTHCARE AS, and Amersham Health, Inc. was renamed GE HEALTHCARE INC.

38.   Defendants GENERAL ELECTRIC COMPANY, GE HEALTHCARE AS, and GE HEALTHCARE, INC. are corporate successors to Amersham pic and its related entities and, as such, are obligated for their predecessors' liabilities.   Amersham pic, either itself or by and through its subsidiaries, was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into United States interstate commerce, including commerce in the State of Florida, directly and indirectly through third parties or related entities, the drug Omniscan.

39.   Magnevist is an injectable paramagnetic contrast agent used for magnetic resonance imaging and arteriography.   It contains the metal gadolinium, which is highly toxic in its free state.   Magnevist (also known by its chemical name of gadopentetate dimeglumine) was represented by the BAYER DEFENDANTS to be safe and effective for intravenous administration to facilitate the radiological visualization of cranial and spinal anatomy as well as tumors, lesions, and immediately adjacent areas.   Magnevist was further represented by the BAYER DEFENDANTS to be superior to two of their competitors (Omniscan and OptiMARK) in its thermodynamic and conditional stability, its low volume of excess chelate, and its ability to prevent the release of gadolinium.

40.   OptiMARK is an injectable paramagnetic contrast agent used for magnetic resonance imaging and arteriography.   It contains the metal gadolinium, which is highly toxic in

9

its free state. OptiMARK [also known by its chemical name of gadolinium diethylenetriamine pentaacetic acid bismethoxyethylamide (gadoversetamide)] was represented by DEFENDANT MALLINCKRODT to be safe and effective for intravenous administration to facilitate the visualization of lesions with abnormal vascularity.

41.    Upon information and belief, MultiHance and ProHance are injectable paramagnetic contrast agents for magnetic resonance imaging and arteriography. They contain the metal gadolinium, which is highly toxic in its free state. Upon information and belief, MultiHance and ProHance were represented by the BRACCO DEFENDANTS to be safe and effective for intravenous administration to facilitate visualization of lesions with abnormal blood brain barrier or abnormal vascularity of the brain, spine, and associated tissues.

42.    At all times relevant hereto, all of the Defendants herein (and/or their corporate predecessors) knew, or should have known, about the significant health risk of their products' administration to patients with renal insufficiency, including, but not limited to, the risk of the development of nephrogenic fibrosis in the skin and other vital organs.

43.    At all times relevant hereto, all of the Defendants herein (and/or their corporate predecessors) knew, or should have known that, ia its free state, gadolinium is highly toxic, harmful and dangerous to humans, and causes severe physical injury. Further, all of the Defendants herein (and/or their corporate predecessors) knew, or should have known, of the need to prevent the gadolinium contained in their respective products from becoming free in the body of humans injected with such paramagnetic contrast agents through the use of, among other things, proper design, testing, and manufacturing practices.

44.    At all times relevant hereto, all of the Defendants herein (and/or their corporate predecessors) knew, or should have known, that there were safer, alternative designs for

10

paramagnetic contrast agents that would prevent or minimize the risk of gadolinium becoming free in the bodies of humans and knew, or should have known, of safer, alternative designs for imaging systems that would expose patients, including Plaintiff, to less potential for harm.

45. At all times relevant hereto, all of the Defendants herein (and/or their corporate predecessors) knew, or should have known, that their respective paramagnetic contrast agent products were not reasonably fit, suitable or safe for their intended purposes and, specifically, that they were defective and unsafe for use in patients with renal insufficiency, such as Plaintiff herein.

46. At all times relevant hereto, all of the Defendants herein (and/or their corporate predecessors) knew, or should have known, that the gadolinium contained in their respective products is highly toxic to humans, and knew, or should have known, about the significant health risks associated with administration of these products to patients with renal insufficiency, including, but not limited to, the risk of toxic gadolinium being released into the bodies of such patients, including Plaintiff, with resulting severe physical injury and/or death.

47. Upon information and belief, Plaintiff RICKY L. WOLCOTT was administered the gadolinium based contrast agents on the following occasions (and perhaps on other occasions as well):

    a. Received a gadolinium contrast agent identified as ProHance in connection with a kidney MRI performed at Vero Radiology Associates and ordered by Dr. Paul T. Bakuie on July 3, 2003;

    b. Received a gadolinium contrast agent identified as Omniscan in connection with an abdomen MRI performed at Hohnes Regional Medical Center and ordered by Dr. Peter J. Gilbert on July 13, 2004;

c.  Received a gadolinium contrast agent identified as Onmiscan in connection with a brain/brainstem MRI and a cervical spine MRI performed at Holmes Regional Medical Center and ordered by Dr. Rhodes Kriete on October 15, 2004;

d.  Received a gadolinium contrast agent identified as ProHance in connection with a pelvis MRI performed at Indian River Memorial Hospital and ordered by Dr. Robert B. Ward on April 14, 2005;

e.  Received, upon information and belief, a gadolinium contrast agent that is unidentified in available medical records in connection with a pelvis MRI at Indian River Memorial Hospital ordered by Dr. Robert B. Ward on April 14, 2005.

48.   After being administered ProHance and Omniscan and perhaps other similar products manufactured by other Defendants herein, gadolinium was released into his body. Subsequently, Plaintiff RICKY L. WOLCOTT began experiencing symptoms of Nephrogenic Systemic Fibrosis (NSF), also known as Nephrogenic Fibrosing Dermopathy (NFD), as a result of these repeat administrations of gadolinium.

49.   NSF/NFD develops only in patients with renal insufficiency, such as Plaintiff RICKY L. WOLCOTT, who have been given one or more injections of a gadolinium-based contrast agent including Omniscan, ProHance, and an unidentified gadolinium based contrast agent product

50.   NSF/NFD is predominantly characterized by discoloration, thickening, tightening, and swelling of the skin within weeks after receiving an injection of a gadolinium-based contrast agent, such as those administered to Plaintiff herein. These symptoms can occur weeks or

months after a person is administered these paramagnetic contrast agents. The fibrotic and edematous changes that are developed by NSF patients produce muscular weakness and inhibit flexion and extension of joints, resulting in painful and debilitating contractures. NSF/NFD often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints. The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are accompanied by burning, itching, or severe pain in the areas of the body that are involved. NSF/NFD also progresses to a fibrotic or scarring condition of other vital organs, such as the lungs, heart, liver, and musculature which can inhibit their ability to function properly and may lead to death. NSF/NFD is a progressive disease as to which there is no known cure and little or no treatment options.

51.   All of the Defendants herein (and/or their corporate predecessors) consistently failed to warn consumers and/or their health care providers, including Plaintiff and his healthcare providers that severe, even fatal, injuries could result when their paramagnetic contrast agents were administered to patients with renal insufficiency.

52.   During the years that the all of the Defendants herein (and/or their corpomte predecessors) manufactured, marketed, and sold their respective contrast agent products, there were numerous case reports, studies, assessments, papers, and other relevant experimental, scientific, medical and clinical data that described and/or demonstrated dissociation and transmetailation in connection with the use of certain gadolinium-based contrast agents. Despite tHis, all of the Defendants herein (and/or their corporate predecessors) failed to adequately revise their package inserts, Material Safety Data Sheets, and other product-related literature and to conduct appropriate post-marketing communications in order to convey adequate warnings of the significant danger that the products posed to patients such as Plaintiff with renal impairment.

13

53.     All of the Defendants herein (and/or their corporate predecessors) repeatedly and consistently failed to advise consumers and/or their health care providers, including Plaintiff and his healthcare providers, of the propensity of their respective paramagnetic contrast agents to undergo dissociation and transmetailation *in vivo* and of the causal relationship between certain gadolinium contrast agents and the development of NSF/NFD in patients with renal insufficiency.

54.     Plaintiff RICKY L. WOLCOTT suffers from debilitating and worsening fibrotic changes to his body, including significant pain and suffering, lack of mobility, and disability, as a result of contractures of his extremities caused by NSF/NFD due to his being injected with gadolinium based contrast agents.

55.     As a direct and proximate result of being administered gadolinium based contrast agents, Plaintiff RICKY L. WOLCOTT suffers serious, progressive, permanent and incurable injuries and conditions and faces a likelihood of a shortened life span.

56.     As a direct and proximate result of being administered the gadolinium based contrast agents, Plaintiff RICKY L. WOLCOTT suffered significant harm, conscious pain and suffering, physical injury, bodily impairment, disfigurement and scarring, including, but not limited to, suffering from NSF/NFD. Plaintiff RICKY L. WOLCOTT further suffers significant mental anguish and emotional distress, physical limitations, pain, injury, damages, and harm. Plaintiff RICKY L. WOLCOTT has also incurred medical expenses and other economic harm as a direct and proximate result of being administered gadolinium based contrast agents.

57.     All of the Defendants herein (and/or their corporate predecessors), upon information and belief, have or may have failed to comply with all federal standards and requirements applicable to the sale of their prescription drugs (i.e., respective paramagnetic

14

gadolinium based contrast products) including, but not limited to, one or more of the foliowiug violations:

    a.  Each ofi the Defendants' respective prescription drugs are adulterated pursuant to 21 U.S.C. § 351 because, among otiier things, as each Defendants and their respective products failed to meet established performance standards, and/or the methods, facilities, or controls used for their manufacture, packing, storage or installation by each ofi the Defendants are not in conformity with federal requirements. See, 21 U.S.C. § 351.

    b.  Each ofi the Defendants' respective prescription drugs are adulterated pursuant to 21 U.S.C. § 351 because, among other things, their strength differs from or their quality or purity falls below the standard set forth in the official compendium for the drugs and such deviations are not plainly stated on their respective labels.

    c.  Each of the Defendants' respective prescription drugs are misbranded pursuant to 21 U.S.C. § 352 because, among other things, their respective labeling is false or inisleading.

    d.  Each ofi the Defendants' prescription drug are misbranded pursuant to 21 U.S.C. § 352 because words, statements, or other infonnation required by (or under authority of chapter 21 U.S.C. § 352) are not prominentiy placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by tile ordinary individual under customary conditions ofipurchase and use.

e. Each of the Defendants' respective prescription drugs are misbranded pursuant to 21 U.S.C. § 352 because the respective labeling does not bear adequate directions for use, and/or the labeling does not bear adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as is necessary for the protection of users.

f. Each of the Defendants' respective prescription drugs are misbranded pursuant to 21 U.S.C. § 352 because they are dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g. Each of the Defendants' respective prescription drugs fail to contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons omissions in whole or in part, or incorrect specifications of:

i. Statements of all conditions, purposes, or uses for which each respective drug is intended, including conditions, purposes, or uses for which each respective drug is prescribed, recommended or suggested in their respective oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which such drugs are commonly used;

ii. Quantity of dose, including usual quantities for each of the uses for which the respective drugs are intended and usual quantities for persons of different ages and different physical conditions;

16

      iii.  Frequency of administration or application;

      iv.  Duration or administration or application; and/or

      v.  Route or method of administration or application.

h.  Each of the Defendants violated 21 CFR § 201.56 because iabehng for the respective drugs was not informative and accurate.

i.  Each of the Defendants' respective prescription drugs are misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j.  Each of the Defendants violated 21 CFR § 201.57 by failing to provide infonnation that was important to the safe and effective use of the respective drugs, Including (but not limited to) the degree and rate of absorption, pathways of biotransformation, percentage of dosage as unchanged drug and metabolites, rate or half-time of elimination, concentration in body fluids associated with therapeutic and/or toxic effects, degree of binding to plasma proteins, and/or the degree of uptake by a particular organ.

k.  Each of the Defendants violated 21 CFR § 201.57 because evidence was only available to support the safety and effectiveness of the drugs in selected subgroups of the larger population with a particular disease, syndrome, or symptom, and the labeliag of the respective drugs failed to describe the available evidence and state the limitations of usefulness of the drugs.

l.   Each of the Defendants violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took their prescription drugs.

m.   Each of the Defendants violated 21 CFR § 201.57 because the safety considerations regarding the respective prescription drugs were such that the drugs should be reserved for certain situations, and the Defendants failed to state such information.

n.   Each of the Defendants' respective prescription drugs were mislabeled pursuant to 21 CFR § 201.57 because the respective labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur.

o.   Each of the Defendants' respective prescription drugs are mislabeled pursuant to 21 CFR § 201.57 because the respective labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drugs.

p.   Each of the Defendants violated 21 CFR § 201.57 because the respective labeling failed to list the adverse reactions that occur with the prescription drugs and other drugs in the same pharmacologically-active and chemically-related class.

q.   Each of the Defendants violated 21 CFR § 201.57 because the possibility that a patient could develop NSF/NFD is significantly more severe than the other reactions listed in the adverse reactions section of the labeling, yet the

Defendants failed to list the development of NSF/NFD before the other, less severe adverse reactions on the labeling of the prescription drugs.

r. Each of the Defendants' respective prescription drug is mislabeled pursuant to 21 CFR § 201.57 because the respective labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness has not been established.

s. Each of the Defendants' respective prescription drugs violate 21 CFR § 210.1 because the process by which each respective drug is manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice methods to be used in, and the facilities and controls to be used for, the manufacture, packaging, or holding of a drug to assure that it meets the requirements as to safety and have the identity, strength, quality, and purity characteristics that each of the respective drugs are purported or are represented to possess.

t. Each of the Defendants' respective prescription drugs violate 21 CFR § 210.122 because the labeling and packaging materials for each of the drugs does not meet the appropriate specifications.

u. Each of the Defendants' respective prescription drugs violate 21 CFR § 211.165 because the test methods employed by each of the Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibtlity of test methods have not been properly established and documented.

v.  Each of the Defendants' respective prescription drugs violate 21 CFR § 211.165 in that the prescription drugs fail to meet established standards or specifications and any other relevant quality control criteria.

w.  Each of the Defendants' respective prescription drugs violate 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drug of each of the respective Defendants herein was not followed.

x.  Each of the Defendants' respective prescription drugs violates 21 CFR § 310.303 in that the prescription drugs are not safe and effective for their intended uses.

y.  Each of the Defendants violated 21 CFR § 310.303 because each Defendant failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA for their respective drugs.

z.  Each of the Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to report adverse events associated with their respective prescription drugs as soon as possible or at least within 15 days of the initial receipt by each of the Defendants of a report or information regarding adverse drug experiences.

aa. Each of the Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with their

respective prescription drugs, and evaluating the cause of the various adverse events.

bb.  Each of the Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

cc.  Each of the Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

dd.  Each of the Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to identify the reports that each Defendant submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report follow-up."

ee.  Each of the Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of their respective prescription drugs or otherwise received by each of the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that had not already been previously reported to the agency by the drugs' sponsors.

ff.  Each of the Defendants violated 21 CFR § 312.32 because they failed to notify the FDA in a written IND safety report of the adverse experiences

associated with the use of their respective prescription drugs that were serious and unexpected.

gg. Each of the Defendants violated 21 CFR § 314.80 by failing to report adverse drug experiences at quarterly intervals for three (3) years from the date of approval of the application, and then at annual intervals, with regard to each of their respective drugs.

hh. With regard to their respective prescription drugs, each of the Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing the following:

    i. A narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval;

    ii. An Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report; and/or

    iii. A history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ii. Each of the Defendants violated 21 CFR § 314.80 by failing to submit a copy of the published article from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature with regard to their respective drugs.

## COUNT I
## STRICT PRODUCTS LIABILITY FOR MANUFACTURING DEFECT

58.    Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

59.    Each of Defendants herein (and/or their corporate predecessors) were manufacturers, designers, distributors, sellers, or suppliers of their respective gadolinium containing magnetic resonance contrast media products.

60.    The Omniscan, ProHance, and unidentified gadolinium contrast materials injected into Plaintiff were manufactured, designed, sold, distributed, and/or placed into the stream of commerce by each of the Defendants herein (and/or their corporate predecessors) and were defective in their respective manufacture and construction when each product left the hands of the respective Defendants (and/or their corporate predecessors) in that each product deviated from the respective product specifications, posing a serious risk of injury and death to Plaintiff RICKY L. WOLCOTT.

61.    As a direct result of Plaintiff RICKY L. WOLCOTT being administered the contrast agent products Omniscan, ProHance, and the unidentified gadolinium based contrast agent that were defective as manufactured, designed, sold, supplied, marketed, and introduced into the stream of commerce by each of the Defendants (and/or their corporate predecessors), and, as a direct result, of the failure of each of the Defendants herein (and/or their corporate predecessors) to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

23

## COUNT II
## STRICT PRODUCTS LIABILITY FOR DESIGN DEFECT

62.   Plaintiff **RICKY L. WOLCOTT** hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

63.   Each of the Defendants herein (and/or their corporate predecessors) were manufacturers, designers, distributors, sellers, and/or suppliers of their respective gadolinium based magnetic resonance contrast media products.

64.   The Omniscan, ProHance, and unidentified gadolinium contrast materials injected into Plaintiff manufactured and supplied by each of the Defendants herein (and/or their corporate predecessors) were defective in their design or formulation in that, when each of the products left the hands of each of the Defendants herein(and/or their corporate predecessors), the foreseeable risks of the respective products exceeded the benefits associated with their respective design or formulation, or the respective products were  more dangerous than an ordinary consumer would expect.   Further, each of the products was unsafe for their anticipated use, and safer and reasonable alternative designs existed and could have been utilized, such that reasonably prudent manufacturers would not have placed these products in the stream of commerce with knowledge of these design flaws.

65.   The foreseeable risks associated with the design or formulation of each of the Defendants' respective paramagnetic contrast media products include, but are not limited to, the fact that their design or formulation is more dangerous than a reasonably prudent consumer would expect when each of the products are used in an intended or reasonably foreseeable manner.

24

66. As a direct result of Plaintiff RICKY L. WOLCOTT being administered Onmiscan, ProHance, and the unidentified gadolinium contrast materials, as manufactured, designed, sold, supplied, marketed, and introduced into the stream of commerce by each of the Defendants herein (and/or their corporate predecessors) and as a direct results of each of the failure of each of the Defendants herein (and/or their corporate predecessors) to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

## COUNT III
## STRICT PRODUCTS LIABILITY DUE TO INADEQUATE WARNING

67. Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

68. The Omniscan, ProHance, and unidentified gadolinium contrast materials injected into Plaintiff manufactured and supplied by each of the Defendants herein (and/or their corporate predecessors) were defective due to inadequate warnings or instructions because each of the Defendants herein (and/or their corporate predecessors) knew, or should have known, that their respective products created significant risks of serious bodily harm and death to consumers, including Plaintiff herein, and they failed to adequately warn consumers and/or their healthcare providers, including Plaintiff RICKY L. WOLCOTT and his healthcare providers, of such risks.

69. The Omniscan, ProHance, and unidentified gadolinium based contrast agents injected into Plaintiff that were manufactured and supplied by each of the Defendants herein (and/or their corporate predecessors) were defective due to inadequate warnings or instructions because after each of the Defendants herein (and/or their corporate predecessors) knew, or

25

should have known, of the risks of serious bodily harm and death from the administration of their respective gadolinium based magnetic resonance contrast media products, each of the Defendants herein (and/or their corporate predecessors) failed to provide adequate warning to consumers and/or their health care providers, including Plaintiff RICKY L. WOLCOTT and his healthcare providers, about their respective products, knowing the product could cause serious injury and death.

70. As a direct result of Plaintiff RICKY L. WOLCOTT being administered Omniscan, ProHance, and unidentified gadolinium based contrast agents as manufactured, designed, sold, supplied, marketed, and introduced into the stream of commerce by each of the Defendants herein (and/or their corporate predecessors) and as a directly result of the failure of each of the Defendants herein (and/or their corporate predecessors) to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic loss and harm.

**COUNT IV**
**STRICT PRODUCT LIABILTY FOR DEFECT DUE TO**
**NONCONFORMANCE WITH REPRESENTATIONS**

71. Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

72. Each of the Defendants herein (and/or their corporate predecessors) were manufacturers, designers, distributors, sellers, and/or suppliers of their respective gadolinium based magnetic resonance contrast media products and made representations regarding the character or quality of their respective gadolinium based magnetic resonance contrast media products.

73. The gadolinium based magnetic resonance contrast media products manufactured and supplied by each of the Defendants herein (and/or their corporate predecessors) were defective in that, when the respective products left the hands of each of the Defendants herein (and/or their corporate predecessors), the products did not conform to representations made concerning each of the products.

74. Plaintiff RICKY L. WOLCOTT and/or his healthcare providers justifiability relied upon representations made by each of the Defendants herein (and/or their corporate predecessors) regarding their respective gadolinium based magnetic resonance contrast media products at the time that such products here administered to Plaintiff.

75. As a direct and proximate result of Plaintiff RICKY L. WOLCOTT being administered Omniscan, ProHance, and unidentified gadolinium based contrast agents and Plaintiff s reliance on representations made by each of the Defendants herein (and/or their corporate predecessors) regarding the character and quality of their respective gadolinium based magnetic resonance contrast media products, as well as the failure of each of the Defendants herein (and/or their corporate predecessors) to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic loss and hann.

### COUNT V
### STRICT PRODUCTS LIABILITY FOR
### FAILURE TO ADEQUATELY TEST

76. Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, paragraphs 1 through 57 above.

77. Each of the Defendants herein (and/or their corporate predecessors) were manufacturers, designers, distributors, sellers, and/or suppliers of their gadolinium based

magnetic resonance contrast media products and made representations regarding the character or quality of their respective gadolinium based magnetic resonance contrast media products.

78.    Each of the Defendants herein (and/or their corporate predecessors) advised consumers and the medical community, including Plaintiff and his healthcare providers, that their respective products were safe for use.  However, each of the Defendants herein (and/or their corporate predecessors) failed to adequately test their respective product with respect to their use by consumers with renal insufficiency, such as Plaintiff herein.

79.    If each of the Defendants herein (and/or their corporate predecessors) adequately tested the safety of their respective products for use by consumers with renal insufficiency and disclosed those results to the medical community and/or the public, Plaintiff RICKY L. WOLCOTT would not have been administered gadolinium based contrast agent products.

80.    As a direct and proximate result of Plaintiff RICKY L. WOLCOTT being administered Omniscan, ProHance, and unidentified gadolinium based contrast agents and the reliance on the representations of each of the Defendants herein (and/or their corporate predecessors) regarding the character and quality of their respective gadolinium based magnetic resonance contrast media products and the safety testing conducted by each of the Defendants, as well as the failure of Defendants herein (and/or their corporate predecessors) to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic loss and harm.

## COUNT VI
## STRICT LIABILITY IN TORT

81.   Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

82.   Each of the Defendants herein (and/or their corporate predecessors) used and controlled toxic gadolinium for injection in humans, including Plaintiff.

83.   Gadolinium is highly toxic, inherently dangerous, and ultra-hazardous to humans, including Plaintiff herein.

84.   Each of the Defendants herein (and/or their corporate predecessors) allowed and directed that toxic gadolinium be used and injected in humans, including Plaintiff.

85.   As a direct result of Plaintiff RICKY L. WOLCOTT being administered the contrast agent products Omniscan, ProHance, and the unidentified gadolinium based contrast agent that were defective as manufactured, designed, sold, supplied, marketed, and introduced into the stream of commerce by each of the Defendants (and/or their corporate predecessors), and, as a direct result, based upon the representations by each of the Defendants regarding the characteristics and quality of their respective products, and the failure of each of the Defendants herein (and/or their corporate predecessors) to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

## COUNT VII
## NEGLIGENCE – HIGHEST POSSIBLE DUTY OF CARE

86.   Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

87. Because gadolinium is highly toxic, inherently dangerous and ultra-hazardous to humans, each of the Defendants herein (and/or their corporate predecessors) had a duty to exercise the highest possible degree of care in the design, manufacture, testing, sale and/or distribution of their respective products into the stream of commerce, including commerce in the State of Florida, including the duty to assure that their products did not pose a significantly iacreased risk of bodily harm and adverse events to patients, including Plaintiff.

88. Each of the Defendants herein (and/or their corporate predecessors) failed to exercise the highest possible degree of care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, and distribution of their respective products that were introduced into interstate commerce in that each of the Defendants herein (and/or their corporate predecessors) knew or should have known that their respective products were highly toxic, inherently dangerous, and ultra-hazardous to humans, including Plaintiff, and caused such significant bodily harm or death such that the products were not safe for administration to consumers, including Plaintiff herein.

89. Each of the Defendants herein (and/or their corporate predecessors) also failed to exercise the highest possible degree of care in the labeling of their respective product and failed to issue to consumers and/or their healthcare providers, including Plaintiff and his healthcare providers, adequate warnings of the risk of serious bodily injury or death due to the use of their respective products.

90. Despite the fact that each of the Defendants herein (and/or their corpomte predecessors) knew or should have known that their respective products posed a serious risk of bodily harm to consumers, such as Plaintiff, and were highly toxic, inherentiy dangerous and ultra-hazardous to humans (particularly those with renal insufficiency such as Plaintiff herein),

30

each of the Defendants herein (and/or their corporate predecessors) continued to manufacture and market their product for administration to magnetic resonance imaging and arteriography patients with renal insufficiency.

91.   Each of the Defendants (and/or their corporate predecessors) knew or should have known or foreseen that consumers such as Plaintiff RICKY L. WOLCOTT would suffer injury as a result of the failure of each of the Defendants (and/or their corporate predecessors) to exercise the highest possible degree of care as described above.

92.   As a direct and proximate result of Plaintiff RICKY L. WOLCOTT being administered Omniscan, ProHance, and unidentified gadolinium based contrast agents and reliance on representations of each of the Defendants (and/or their corpomte predecessors) regarding the character and quality of their respective gadolinium based magnetic resonance contrast media products, as well as the failure of each of the Defendants herein (and/or their corporate predecessors) to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic loss and harm.

<u>COUNT VIII</u>
<u>NEGLIGENCE</u>

93.   Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

94.   Each of the Defendants herein (and/or their corporate predecessors) had a duty to exercise reasonable care in the design, manufacture, sale, and/or distribution of their respective gadolinium based magnetic resonance contrast media products when introducing such products into the stream of commerce, including a duty to assure that their respective products did not

31

pose a significantly increased risk of bodily harm and adverse events to patients, including Plaintiff.

95.    Each of the Defendants herein (and/or their corporate predecessors) failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of their respective gadolinium based magnetic resonance contrast media products that were introduced into interstate commerce in that each of the Defendants herein (and/or their corporate predecessors) knew, or should have known, that their respective products caused significant harm and/or death and were not safe for administration to consumers, including Plaintiff

96.    Each of the Defendants herein (and/or their corporate predecessors) also failed to exercise ordinary care in the labeling of their respective gadohnium based magnetic resonance contrast media products and failed to issue to consumers and/or their healthcare providers, including Plaintiff and his healthcare providers, adequate warnings regard the risks of serious bodily injury and/or death due to use of their products by consumers, such as Plaintiff.

97.    Despite the fact that each of the Defendants herein (and/or their corporate predecessors) knew, or should have known, that their respective gadolinium based magnetic resonance contrast media products posed a serious risk of bodily harm to consumers, including Plaintiff herein, each of the Defendants herein (and/or their corporate predecessors) continued to manufacture and market their gadolinium based magnetic resonance contrast media products for administration to magnetic resonance imaging and arteriography patients with renal insufficiency including Plaintiff.

98.    Each of the Defendants herein (and/or their corporate predecessors) knew, or should have known or foreseen that consumers, such as Plaintiff RICKY L. WOLCOTT would

suffer injury as a result of each of the failure of each of the Defendants herein (and/or their corporate predecessors) to exercise ordinary care as described above.

99.   As a direct and proximate result of Plaintiff RICKY L. WOLCOTT being administered Omniscan, ProHance, and unidentified gadolinium based contrast agents and the negligence of each of the Defendants herein (and/or their corporate predecessors), Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

## COUNT IX
## BREACH OF EXPRESS WARRANTY

100.   Plaintiff hereby incorporates by reference, as if fully set forth herein, paragraphs 1 through 57 above.

101.   Each of the Defendants herein (and/or their corporate predecessors) expressly warranted that their respective gadolinium based magnetic resonance contrast media products were safe and effective for use in connection with magnetic resonance studies.

102.   The gadolinium based magnetic resonance contrast media products manufactured and sold by each of the Defendants herein (and/or their corporate predecessors) did not conform to these representations because each of the products caused serious injury to consumers, including Plaintiff, when injected in routinely administered dosages.

103.   As a direct and proximate result of the breach of warranty by each of the Defendants herein (and/or their corporate predecessors), as well as their respective failure to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

33

## COUNT X
## BREACH OF IMPLIED WARRANTY

104. Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, paragraphs 1 through 57 above.

105. At the time that each of the Defendants herein (and/or their corporate predecessors) designed, manufactured, marketed, sold, and distributed their respective products, each of the Defendants herein (and/or their corporate predecessors) knew of the use for which their respective products were intended and impliedly warranted their respective products were of merchantable quality and safe and fit for such use.

106. Plaintiff RICKY L. WOLCOTT reasonably relied upon the skill and judgment of each of the Defendants herein (and/or their corporate predecessors) as to their respective gadolinium based contrast agent products were of merchantable quality and safe and fit for their intended uses, and reasonably relied upon Defendants' (and/or their corporate predecessors') implied warranty as to such matters.

107. Contrary to such implied warranty, Omniscan, ProHance, and the unidentified gadolinium based contrast agent were not of merchantable quality or safe or fit for their intended uses because such products were unreasonably dangerous as described above.

108. As a direct and proximate result of Defendants' (and/or their corporate predecessors') breach of warranty, as well as their failure to comply with applicable federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

34

## COUNT XI
## FRAUD AND MISPRESENTATION

109.    Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

110.    Each of the Defendants herein (and/or their corporate predecessors) knowingly and intentionally made material and false and misleading representations to Plaintiff RICKY L. WOLCOTT, his healthcare providers and to the public that their respective gadolinium based contrast agent products were safe for use and that Defendants' (and/or their corporate predecessors') respective labeling, marketing, and promotion fully described all known risks of those products.

111.    Each of the Defendants' (and/or their corporate predecessors') representations were in fact false, none of their products were safe for use and the respective products' labeling, marketing and promotion did not fully describe all known risks of such products.

112.    Each of the Defendants (and/or their corporate predecessors) had actual knowledge based upon studies, published reports and clinical experience that their respective products created an unreasonable risk of serious bodily injury and death to consumers, and specifically consumers with renal insufficiency (such as Plaintiff herein) or should have known such information.

113.    Each of the Defendants herein (and/or their corporate predecessors) knowingly and intentionally omitted this important safety information from their respective product labeling, marketing, and promotion and, instead, labeled, promoted, and marketed their respective products as safe for use by patients, such as Plaintiff, in order to avoid monetary losses and in order to sustain continued sales and profits.

35

114. When each of the Defendants (and/or their corporate predecessors) made representations that their respective gadolinimn contrast media products were safe for use, each of the Defendants herein (and/or their corpomte predecessors) knowingly and intentionally concealed and withheld from Plaintiff RICKY L. WOLCOTT, his healthcare providers and the public the true facts their respective products were not safe for use in consumers with renal insufficiency, including Plaintiff

115. Each of the Defendants herein (and/or their corporate predecessors) had a duty to disclose to Piaintiff RICKY L. WOLCOTT, his healthcare providers and the pubhe that their respective gadohnium contrast media products were not safe for use in patients with renal insufficiency in that those products cause NSF/NFD, especially since each of the Defendants had superior knowledge of these facts and safety risks that were material to Plaintiff RICKY L. WOLCOTT and his healthcare providers in making decisions about his medical care.

116. Plaintiff RICKY L. WOLCOTT and his healthcare providers reasonably and justitiably relied on the conceahnent of the true facts by each of the Defendants herein (and/or their corporate predecessors) and reasonably and justifiably relied upon Defendants' (and/or their corporate predecessors') representations to Plaintiff RICKY L. WOLCOTT and/or his healthcare providers that theîh respective gadolinium contrast media products were safe for human consumption and/or use and that each of the Defendants' (and/or their corporate predecessors') labehng, marketing, and promotion fully described all known risks of their respective products.

117. Had Plaintiff RICKY L. WOLCOTT and his healthcare providers known of Defendants' (and/or their corporate predecessors') conceahnent of the true facts that their respective gadolinium contrast media products were not safe for human use, Plaintiff RICKY L. WOLCOTT would not have been administered Omniscan, ProHance, and unidentified

gadolinium based contrast agents.

118.   As a direct and proximate result of the breach of warranty by each of the Defendants (and/or their corporate predecessors), as well as their respective failure to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

## COUNT XII
## NEGLIGENT MISREPRESENTATION

119.   Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fitily set forth herein, paragraphs 1 through 57 above.

120.   Each of the Defendants (and/or their corporate predecessors), in the course of their business profession and through their various sales representatives and agents, supplied Plaintiff RICKY L. WOLCOTT and his healthcare providers with false information for guidance in their decision to use Omniscan, ProHance, and unidentified gadolioium based contrast agents.

121.   The false information supplied by each of the Defendants (and/or their corporate predecessors) with regard to their respective gadolinium based contrast agent products to Plaintiff RICKY L. WOLCOTT and his healthcare providers was that these products were safe and that the use of such products would not adversely affect Plaintiff's health.

122.   In supplying this false information, each of the Defendants herein (and/or their corporate predecessors) failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff RICKY L. WOLCOTT and his healthcare providers.

123.   The false information supplied and communicated by each of the Defendants (and/or their corporate predecessors) to Plaintiff RICKY L. WOLCOTT and his healthcare

providers was material, and Plaintiff RICKY L. WOLCOTT and his healthcare providers justifiably relied in good faith on the information provided by each of the Defendants herein (and/or their corporate predecessors) to their detriment.

124.   As a direct and proximate result of the negligent misrepresentations by each of the Defendants herein (and/or their corporate predecessors), as well as their respective failure to comply with federal standards and requirements, Plaintiff RICKY L. WOLCOTT suffered significant disfigurement, disability, mental anguish, emotional distress, physical limitations, pain, injury, damages, economic losses and harm.

**COUNT XIII**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT**
**("FDUTPA")**

125.   Plaintiff RICKY L. WOLCOTT hereby incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

126.   The actions of each of the Defendants (and/or their corporate predecessors) are deceptive and in clear violation of FDUPTA, entitling Plaintiff RICKY L. WOLCOTT to damages and relief under Florida Statutes §§ 501.201-213.

127.   Plaintiff RICKY L. WOLCOTT is a "consumer" as defined by § 501.203, Florida Statutes.

128.   Florida Statute § 501.211 creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice committed by another person.

129.   Florida Statute § 501.2105 provides that the prevailing party in litigation pursuant to Chapter 501 shall be entitled to recover attorneys' fees within the limitations set forth therein from the non-prevailing party.

130.   Florida Statute § 501.213 provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

131.   Florida Statute § 501.203(3) (c) states that the person has violated FDUPTA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive or unconscionable acts or practices."

132.   Each of the Defendants (and/or their corporate predecessors) engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce defective products which each knew or should have known was defective which constitutes trade and commerce as defined by § 501.203(8) Florida Statute, and is therefore subject to FDUTPA.

133.   Each of the Defendants (and/or their corporate predecessors) failed to advise Plaintiff RICKY L. WOLCOTT and his healthcare providers of the defects in design and/or manufacture of their respective gadolinium contrast agent products after such defects became known to each of the Defendants herein (and/or their corporate predecessors).

134.   Each of the Defendants' (and/or their corporate predecessors') conduct constitutes as unfair method of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violations of FDUTPA, such that Plaintiff RICKY L. WOLCOTT is entitled to recovery under Chapter 501, Florida Stamtes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RICKY L. WOLCOTT demands judgment against each of the Defendants (and/or their corporate predecessors) for all damages available under the law, together with interest, as well as the costs of this action, attorneys' fees, and all such other relief as this Court deems proper with regard to all of the various causes of action asserted herein. In addition, Plaintiff RICKY L. WOLCOTT demands a trial by jury of all issues to be tried.

## CERTIFICATION

Pursuant to the provisions of **Rule 4:5-1**, the undersigned attorney certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding, nor is any other action or arbitration proceeding contemplated, and all known necessary parties have been joined in this action.

Dated this 27th day of July, 2010.

By: Brenda S. Fulmer, Esq.
FL Bar No.: 999891
Searcy Denney Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Telephone:     561-686-6300
Facsimile:     561-383-9498
BSF@Searcylaw.com